1

2

3

4

5             UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
6                    AT SEATTLE

7    _____
                                              )
8    In re:  PARK WEST GALLERIES, INC.,       )      MDL No. 09-2076RSL
     MARKETING AND SALES PRACTICES            )
9    LITIGATION                               )
     _____ )
10                                            )      ORDER GRANTING
     THIS DOCUMENT RELATES TO:                )      PARK WEST'S MOTION TO
11                                            )      DISMISS SECOND AMENDED
     Bouverat v. Park West Galleries, Inc.,   )      COMPLAINT
12   Case No. C09-1177RSL.                    )
     _____ )
13

14          This matter comes before the Court on "Park West's Motion Dismiss Plaintiffs'

15   [sic] Second Amended Complaint" in <u>Bouverat v. Park West Galleries, Inc.</u>  MDL09-2076, Dkt.

16   # 98; C09-1177RSL, Dkt. # 118.  Defendants Park West Galleries, Inc., PWG Florida, Inc., Fine

17   Art Sales, Inc., and Vista Fine Art, LLC (together, "Park West") seek dismissal of all of the

18   claims asserted against them.  Having reviewed the memoranda, declarations, and exhibits

19   submitted by the parties and having heard the argument of counsel, the Court finds as follows:

20   **A. MATTERS OUTSIDE THE PLEADINGS**

21          In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's

22   review is generally limited to the contents of the complaint.  <u>Campanelli v. Bockrath</u>, 100 F.3d

23   1476, 1479 (9th Cir. 1996).  The Court may, however, consider documents referenced

24   extensively in the complaint, documents that form the basis of plaintiff's claim, and matters of

25   judicial notice when determining whether the allegations of the complaint state a claim upon

26   which relief can be granted.  <u>United States v. Ritchie</u>, 342 F.3d 903, 908-09 (9th Cir. 2003).  The

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT

documents attached to plaintiff's complaint, including the invoice and appraisals produced by Park West, fall into at least one of these categories. The Court has, therefore, considered the documents attached to the complaint when determining whether the allegations, taken as true and construed in the light most favorable to plaintiff, give rise to a plausible inference of actionable conduct. See In re Syntex Corp. Sec. Litig., 95 F.3d 922, 925-26 (9th Cir. 1996); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## B. CONTRACTUAL SUIT LIMITATION PROVISION

Plaintiff alleges that he received invoices that were substantially similar to the one attached to his complaint as Exhibit A. Second Amended Complaint ("SAC") ¶ 83(d). The invoices were provided and signed by plaintiff while on board the ship. Id. The invoice has two sides. On the front is transactional information, followed by a nine-line statement wherein plaintiff acknowledged that the purchase of the identified artwork is subject to the terms and conditions set forth in the invoice. Directly above the signature line is the statement, "This invoice contains additional terms and conditions on the reverse side. Those terms and conditions are important and purchaser should read them carefully." The back of the invoice contains approximately thirty terms and conditions, one of which states, "With the sole exception of claims under section 3 of Terms of Guarantee described above, any lawsuit by purchaser asserting any claim whatever relating to artwork purchases shall not be maintainable unless filed within nine months after the invoice date shown on the purchasers' invoice." Plaintiff has not argued that the exception to the limitation provision applies.

### 1. Choice of Law

Plaintiff argues that the suit limitation provision is unenforceable because it was induced by fraud. Different forums have different rules regarding the validity and enforceability of contracts. The parties agree that Washington's choice of law analysis applies, such that the forum with the most significant relationship to the transaction and the parties should supply the

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -2-

governing law.  In order to make this determination, the Court considers:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws§ 188(2).  All of these factors favor jurisdictions other than Washington:  the contract was negotiated and signed at sea, the artwork is presumably located in Florida, and the locations of the parties and/or place of performance include the Florida and Michigan.  Washington has no ties to the agreement or the parties, and its interests do not justify the imposition of Washington law under Restatement (Second) of Conflict of Laws § 6.  The Court therefore concludes that, in the absence of a contractual choice of law provision, federal common law as set forth in the Restatement (Second) of Contracts governs the validity and enforceability of the invoices.

### 2.  Voidable Contract

Plaintiff argues that, because he agreed to purchase artwork (and signed the related invoices) in reliance on Park West's fraudulent representations, the invoices are invalid.  Dkt. # 122 at 19.[1]  Pursuant to the Restatement (Second) of Contracts § 164, "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."  A contracting party is generally not permitted to rely on another's statement of opinion regarding quality or value.  Restatement (Second) of Contracts § 168, comments b and c, and § 169.  It must be assumed that a seller will speak favorably of what he has to sell.

---

[1]  Although this argument was asserted as a defense to the integration clause found in the invoice (Opposition at 19), it applies equally to the contractual suit limitation provision.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -3-

"When he praises it in general terms, commonly known as 'puffing' or 'sales talk,' without specific content or reference to facts, buyers are expected to understand that they are not entitled to rely."  Restatement (Second) of Contracts § 169, comment b.  This rule gives way, however, if the buyer "reasonably believes that, as compared with himself, the person whose opinion is asserted has special skill, judgment or objectivity with respect to the subject matter." Restatement (Second) of Contracts § 169(b).

Plaintiff alleges that he is not a sophisticated purchaser of art and that Park West, by contrast, is a large and knowledgeable art dealer.  Plaintiff alleges that he relied on the following statements made by Park West employees:

- the works purchased by plaintiff were a "good investment" and
- the works would appraise for "many times" the price paid at auction.

SAC ¶ 83(a).[2]  Even if these representations were statements of opinion that plaintiff should reasonably have discounted as "puffery," plaintiff would still be entitled to assume that the statements were "not so far removed from the truth as to be incompatible with the facts known to" Park West.  Restatement (Second) of Contracts § 168, comment d.  Especially in light of plaintiff's reasonable belief that Park West had special skill and judgment with respect to the value of the artwork, they could reasonably infer "that there are facts that justify [Park West's] opinion, or at least that there are not facts that are incompatible with it."  Id.[3]

Plaintiff alleges that Park West grossly misrepresented the value of the artwork it sold, playing on plaintiff's relative lack of information and sophistication to convince him that

---

[2]  Plaintiff also alleges that Park West misrepresented the provenance of the artwork they purchased.  SAC ¶ 124.

[3]  See Restatement (Second) of Contracts § 169, illustration 2 ("A, the proprietor of a dance studio, seeking to induce B, a 60-year-old widow with no background in dancing, to make a contract for dance lessons, tells B that she has 'dance potential' and would develop into a 'beautiful dancer.'  A knows that B has little aptitude as a dancer.  B is induced by A's statement of opinion to make the proposed contract.  B's reliance on A's statement of opinion is justified, and the contract is voidable by B.").

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -4-

the pieces were good investments and likely to appraise for many times the sale price.  A

contract induced by a fraudulent or material misrepresentation is voidable by plaintiff.

Restatement (Second) of Contracts § 164(1).  Plaintiff has not, however, sought to invalidate the

sales contracts.  Because the contracts remain in effect, plaintiff's claims are untimely and must

be dismissed.[4]

## C. RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO")

### 1. Adequacy of Pleading

Plaintiff allege that defendants have violated 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise
> engaged in, or the activities of which affect, interstate or foreign commerce, to
> conduct or participate, directly or indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or collection of unlawful debt.

Park West argues that plaintiff has failed to identify with the particularity required by Fed. R.

Civ. P. 9(b) the existence of an enterprise and a pattern of racketeering activity.  For the most

part, defendants misconstrue the reach of Rule 9(b) in this context and ignore the allegations of

the complaint.

a.  Allegations of "Enterprise"

The statutory definition of "enterprise" is "not very demanding."  Odom v.

Microsoft Corp., 486 F.3d 541, 548 (9th Cir. 2007).  An enterprise "is an entity, for present

purposes a group of persons associated together for a common purpose of engaging in a course

of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  The enterprise need not have

any particular organizational structure separate from its members or beyond that which is

necessary to carry out its chosen course of conduct:  it simply must function as an on-going,

continuing unit.  Odom, 486 F.3d at 551-52.  This element of a RICO claim does not sound in

fraud and need not be pled with particularity.  Plaintiff alleges that Park West and the cruise

---

[4] Because it seems likely that plaintiff will move to amend his complaint to seek invalidation of
the contract, the Court will consider defendants' other arguments on their merits.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -5-

lines participated in an on-going association designed to funnel cruise line passengers to Park West's auctions for the purpose of selling worthless or overvalued artwork and thereby increasing the profits of the association's members.  When asked to review the sufficiency of similar allegations in Odom, the Ninth Circuit applied the pleading standards of Fed. R. Civ. P. 8 and found that the allegations were "more than adequate."  Odom, 486 F.3d at 552.  Even when evaluated through the lense of Twombly, the allegations related to an "enterprise" are sufficient.

> b.  Allegations of "Racketeering Activity"

The racketeering activity alleged in the complaint consists of mail and wire fraud in violation of 18 U.S.C. § 1341 and § 1343.  Mail or wire fraud involves three elements:  (1) the formation of a scheme to defraud, (2) the use of the United States mails or wires in furtherance of the scheme, and (3) defendants' specific intent to deceive or defraud.  United States v. McNeil, 320 F.3d 1034, 1040 (9th Cir. 2003).  Most of the elements, such as the existence of an agreement and defendant's state of mind, may be pled with general, rather than particularized, allegations.  "The only aspects of [mail or] wire fraud that require particularized allegations are the factual circumstances of the fraud itself."  Odom, 486 F.3d at 554.  Although plaintiff is not able to provide the names of the individual Park West auctioneers who allegedly misrepresented the value of the artwork sold, he does identify the time, place, and specific content of the offending statements, as well as the relationship of the speaker(s) to defendants.[5]  These allegations provide a factual basis for the averment of fraud and are sufficient to allow Park West to prepare an answer.  To the extent Rule 9(b) applies to plaintiff's allegations of wire and mail fraud related to the value of the artwork, they have satisfied the heightened pleading requirements.

---

[5]  As discussed below in Section D.2., plaintiff has not adequately pled an intentional misrepresentation regarding the provenance or authenticity of the artwork he purchased.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -6-

c. Allegations of Causation and Reliance

Defendants also challenge the adequacy of plaintiff's allegations regarding causation and reliance.  Plaintiff alleges that he would not have bid on or purchased artwork from Park West had it not misrepresented its investment and appraisal value.  SAC ¶ 85.  Even if one assumes that this straightforward allegation regarding plaintiff's state of mind is somehow insufficient, the underlying factual allegations regarding the parties' relative experience and Park West's statements regarding value raise an inference of reliance that supports the causation allegation.

**2.  18 U.S.C. § 1962(d)**

Section 1962(d) makes it unlawful for any person to conspire to violate § 1962(a), (b), or (c) of RICO.  Although the agreement to violate RICO need not be express, the factual allegations of the complaint, including the words, actions, and relationship between the parties, must raise an inference that an agreement exists.  Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 773, 774-75 (9th Cir. 2002).  Once an agreement is demonstrated, all conspirators, whether or not they individually violated RICO, are jointly and severally liable for the acts of their co-conspirators.  Id. at 775.  See also U.S. v. Fiander, 547 F.3d 1036, 1041 (9th Cir. 2008) (evidence that defendant knew about and agreed to facilitate a violation of RICO supports a finding of conspiracy, even if defendant did not commit the substantive offense).  Plaintiff alleges that Park West and the cruise lines had a long-standing relationship, that their employees worked together to conduct almost every facet of the auctions, that they were aware of the efforts each made to attract passengers to the auction and to sell artwork, and that the cruise lines had a direct financial interest in every sale made on their ships.  These allegations raise a plausible inference of an agreement.  See Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1056 (9th Cir. 2008) (inference of specific intent raised by allegations of knowledge, participation in certain activities, and profit motive).

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -7-

### D.  ADMIRALTY – COMMON LAW FRAUD

Defendants argue that plaintiff's fraud claim fails because:  (1) it is barred by the merger clause in the invoices plaintiff signed; (2) it is not alleged with the particularity required by Rule 9(b); and (3) plaintiff has alleged only "puffery," which is not actionable.

#### 1.  Contractual Merger Clause

The front of the invoices contains the following term in capital letters:  "No verbal agreements or representations shall be of any force or effect unless set forth in writing in this invoice."  A similar term is included on the back of the invoices.  For the reasons discussed above in Section B.2., the invoices, including the merger provision, are voidable by the recipients.  Plaintiff has not, however, sought to invalidate the sales contracts.  Because the merger provisions remain in effect, plaintiff cannot establish that he reasonably relied on prior representations that were expressly voided by the very contract plaintiff signed.[6]

#### 2.  Adequacy of Pleading under Rule 9(b)

Plaintiff alleges that he relied on the following statements made by Park West employees leading up to or during the on-board auctions:

- the works purchased by plaintiff were a "good investment" and

- the works would appraise for "many times" the price paid at auction.

SAC ¶ 83(a).  To the extent plaintiff's fraud claim is based on these allegations, it satisfies the heightened pleading standard of Rule 9(b).

Count II of the complaint also mentions misrepresentations regarding the provenance and authenticity of the purchased works.  There are no factual allegations in support of these asserted misrepresentations.  It is not clear what, if anything, was said on these subjects,

---

[6]  Plaintiff argues that, because Park West breached a provision of the invoices first, it cannot enforce the remainder of the contract.  Plaintiff has not alleged a breach of contract claim against Park West, has not shown that the alleged defects in the appraisals rendered further performance by plaintiff ineffective or impossible (Tocco v. Tocco, 409 F. Supp.2d 816, 829 (E.D. Mich. 2009)), and has not identified a governing rule of federal common law.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -8-

who said it, when they said it, or whether plaintiff relied thereon.  Mr. Bouverat does not allege

that he was told anything about the provenance or authorship of the works purchased, and he

may not hold Park West liable for statements that may or may not have been made to other

customers.  Plaintiff's allegations center on overstatements of investment and appraisal value,

not a lack of authenticity or the mis-identification of the author.  Because the allegations of the

complaint do not provide Park West with sufficient information to defend a fraud claim arising

out of undisclosed statements regarding provenance or authorship, that part of the fraud claim is

dismissed.

### 3.  Non-Actionable "Puffery"

As discussed above in Section B.2., plaintiff's reliance on Park West's statements

regarding investment and appraisal values may be justified.  Plaintiff could reasonably believe

that, as compared with himself, Park West has special skill and judgment with respect to the

subject matter of the statements.  Restatement (Second) of Contracts § 169(b).  At the very least,

plaintiff had a right to expect that Park West's statements of value were "not so far removed

from the truth as to be incompatible with the facts known to" Park West.  Restatement (Second)

of Contracts § 168, comment d.[7]

### E.  CIVIL CONSPIRACY

Plaintiff alleges that the relationship between defendants and their actions in

furtherance of the fraudulent sales give rise to a plausible inference that there was an agreement

or conspiracy to defraud plaintiff.  For purposes of the civil conspiracy claim, the underlying

fraud – Park West's misrepresentations regarding the investment and appraisal value of the

---

[7] Defendants' argument that their statements were merely predictions of future events is not persuasive.  Defendants' statements are definite and provide information regarding the investment or appraisal value of the artwork at the time of the statement.  In addition, the statements imply a number of subsidiary facts, such as that Park West had a particular state of mind concerning the subject (*i.e.*, it believed what its employees said), that Park West was certain enough to make a definitive statement regarding present value, and that Park West had information that justified its belief or at least did not have information that was incompatible with its statement.

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT    -9-

artwork sold – is adequately plead under Rule 9(b).  The other elements of the conspiracy claim, including the existence of an agreement, can be alleged generally, and plaintiff has alleged facts from which one could infer the existence of an agreement.[8]

**F.  UNJUST ENRICHMENT**

Generally, "[a] party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract."  <u>Chandler v. Wash. Toll Bridge Auth.</u>, 17 Wn.2d 591, 604 (1943).  <u>See</u> also <u>Bouverat v. Park West Gallery, Inc.</u>, C08-21331-Jordan (S.D. Fla. Dec. 22, 2008).  Because plaintiff has not sought to void the invoices, they govern the relationship between the parties.  Plaintiff's equitable claim of unjust enrichment against Park West therefore fails as a matter of law.

For all of the foregoing reasons, the Court GRANTS Park West's motion to dismiss the Second Amended Complaint submitted by Mr. Bouverat.  Because plaintiff has not sought to invalidate the invoices that govern the parties' relationship, his claims are barred under the contractual limitations provision, his alleged reliance on representations made prior to contracting was unjustified, and his equitable unjust enrichment claim fails.

Dated this 25th day of June, 2010.

MM S Lasnik

Robert S. Lasnik
United States District Judge

---

[8]  Defendants have apparently abandoned their argument that plaintiff's conspiracy claim should be dismissed because South Carolina law requires allegations of "special damages."

ORDER GRANTING PARK WEST'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT   -10-